UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

DEBRA HUTSELL,                        )
                                      )
        Plaintiff,                    )
                                      )
        v.                            )        Case No. 4:25-cv-4-AZ
                                      )
FRANK BISIGNANO,                      )
Commissioner of Social Security,      )
                                      )
        Defendant.                    )

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Debra Hutsell's appeal of the Commissioner of the Social Security Administration's (the "Commissioner") denial of disability benefits.[1] For the reasons discussed, the Court agrees with Hutsell that flaws in the Administrative Law Judge's ("ALJ") written decision require a remand. The Court will therefore reverse and remand the Hutsell's claim for further administrative proceedings.

**Background**

Plaintiff Debra Hutsell was 40-years old when at the time she alleged she became disabled and unable to work A.R. 38.[2] She is a high school graduate. *Id* Hutsell filed an application for Social Security Disability Insurance benefits on April 12, 2022. A.R. 17. In her applications, she alleged a disability onset date of August 5,

---

[1] On May 16, 2025, both parties consented to the jurisdiction of the assigned Magistrate Judge for all purposes pursuant to 28 U.S.C. 636(c). *See* DE 12.

[2] Citations to the Administrative Record, filed at DE 6, are throughout as "A.R."

2021. *Id.* Her claims were denied in the initial application, upon reconsideration, and Kratzman requested a hearing before an ALJ. *Id.* On September 22, 2023, the ALJ held a telephonic hearing at which Hutsell and a Vocational Expert ("VE") testified. *Id.* On December 5, 2023, the ALJ issued a written decision, denying benefits. A.R. 14-29. Plaintiff timely appealed to the Appeals Council, but the Appeals Counsel denied Plaintiff's Request for Review. Plaintiff then timely filed her complaint for District Court review. DE 1.

Because the Appeals Council denied review, the ALJ's written decision is the final decision reviewed by the Court. *See* 20 C.F.R. §§ 404.981, 416.1481. In that written decision, the ALJ followed the standard five-step process to determine whether Hutsell was disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ determined that she had not engaged in substantial gainful activity since the alleged onset date of August 5, 2021, despite some part time work after that date. A.R. 19-20.

At step two, the ALJ determined that Hutsell suffered from the following severe impairments: status post 1997 surgery and hardware in the right hip/pelvis; status post 1997 surgery to the right knee; status post 2006 surgery to the left knee; cervical spinal stenosis with arthroplasty in 2023; status post-surgery of the lumbar spine and SI joint; diverticulosis; obesity; essential tremor; major depressive disorder, recurrent, severe without psychotic features; and anxiety/panic disorder/agoraphobia (20 CFR 404.1520(c)). A.R. 20. As such, the ALJ found Hutsell had severe physical musculoskeletal impairments, as well as psychological impairments. The ALJ found

her other impairments (hypertension and gastroesophageal reflux diseases ("GERD")) to be non-severe. *Id.*

At step three, the ALJ concluded that Hutsell does "not have an impairment or combination of impairments that meet or medically equals the severity of" any applicable listing which would presumptively entitle her to a finding of disability. A.R. 20-25. At step four, the ALJ determined Hutsell's Residual Functional Capacity (RFC) and found Plaintiff could:

> perform light work as defined in 20 CFR 404.1567(b) except she can stand for four hours, and walk two hours, can sit for six hours out of an eight-hour workday. She can occasionally climb stairs or ramps, stoop, or crouch, can never kneel, crawl, climb ladders, ropes, or scaffolds, or balance, as that term is used vocationally. She needs access to a bathroom, so no work outdoors. With work that can be learned in 30 days, or less, with simple routine tasks, simple work-related decisions, and routine work-place changes. She is able to remain on task in two-hour increments, with no production rate pace work such as on an assembly line or with hourly production quotas. Occasional interaction with coworkers, no tandem tasks, occasional interaction with supervisors after the initial training period, and no interaction with the general public.

AR 25-26. In the narrative portion of the RFC, the ALJ recounted the underlying evidence which factored into the RFC determination. The Court will not repeat all of it, as it is unnecessary to rehash the entire medical history given the limited scope of the Court's review. In general, the ALJ chronicled evidence relating to Hutsell's physical and psychological limitations and how her testimony regarding her abilities was either contradicted or was not entirely supported by the medical evidence or her activities of daily living.

The ALJ's most relevant conclusion for purposes of this appeal was that "the consultative exams do not support [Hutsell's] allegations" regarding the physical

limitations she testified to at the hearing. A.R. 29. As the ALJ stated, a Dr. Bangura examined Hutsell on August 24, 2022 and found her abilities to be mostly intact and normal. But Dr. Bangura did note that "she had difficulty with toes and tandem walking" and had "some abnormal motion with decreased range of motion in the lumbosacral area and knees." *Id.* (discussing A.R. 1130-1134); *see also* A.R. 32-33 (discussing Dr. Bangura's exam findings for a second time). The ALJ adopted the limitations suggested by Dr. Bangura as "persuasive because they are consistent with the clinical findings and test results" and incorporated them into the RFC. A.R. 34; *id.* at 35.

Elsewhere in the written decision, the ALJ also discussed another "August 2022" consultative exam's findings that is nowhere to be found in the administrative record. *See* A.R. 30.[3] The ALJ cited physical examination findings that, *inter alia*, found no pain, no stiffness, and no difficulty in walking—all of which contradicts the findings of Dr. Bangura's consultative exam discussed above. The ALJ cited to "Exhibit B6F" for these supposed findings, but that exhibit is a psychological exam and contains none of the findings the ALJ says are found therein. *See* A.R. 403-408.

The ALJ then determined that with this RFC, Hutsell could perform the representative jobs of table work, inspector, sorter, and document preparer. A.R. 39. Therefore, the ALJ found Hutsell not to be disabled. *Id.*

---

[3] As discussed throughout, it is apparent that the ALJ's reference here was to a consultative exam for another claimant or something else entirely. The hearing transcript reflects at least some discussion about another claimant's records being within Hutsell's file that were to be redacted, *see* A.R. 51, but because that information was removed from the file, there is no way to tell if they are what the ALJ was referencing to in this portion of the written decision.

## Discussion

The Social Security Act authorizes judicial review of a final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). A court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). "The threshold for this standard 'is not high.'" *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020) (quoting *Biestek* 587 U.S. at 103). "Substantial evidence in this context means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting marks omitted).

Given this deferential level of review of agency decisions, the Court reviews the administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question is not whether the claimant is in fact disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). "[I]f the Commissioner commits an error of law," the Court may reverse the decision 'without regard to the volume of evidence in

support of the factual findings.'" *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

An ALJ must articulate their analysis of the evidence sufficiently enough that the reviewing court can trace the path of their reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2019) (citations omitted). "An ALJ need not specifically address every piece of evidence," *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2014), but they likewise cannot ignore entire lines of evidence that undercut or contravene their conclusions. "Remand is necessary when it is unclear if the ALJ examined the full range of medical evidence, or if the court cannot trace the ALJ's path of reasoning." *Wolford v. Kijakazi*, 658 F. Supp. 3d 664, 668 (N.D. Ind. 2023) (cleaned up). The Court "cannot uphold an administrative determination that failed to explain the outcome adequately." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (citing *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010)).

Plaintiff raises several arguments on appeal as to why the ALJ's decision should be reversed. First, Plaintiff argues that the ALJ relied on consultative examination records that were not within the record. Second, Plaintiff says that the vocational expert and ALJ relied on outdated information from the DOT to find that

there were significant jobs which Hutsell could perform. Third, Plaintiff argues that the ALJ failed to adequately consider state agency doctor opinions and the limitations imposed by them. Fourth, and finally, Plaintiff argues that the ALJ failed to adequately assess her symptoms and the physical limitations imposed by them. As discussed below, the Court finds that the ALJ sufficiently erred on the first point such that remand is required, so the remaining arguments need not be addressed now.

The Commissioner concedes, as he must, that the ALJ's decision in this case cites, recites and relies on physical examination findings that were not based on an examination of Plaintiff. Admittedly, because the findings at issue aren't anywhere to be found in the Administrative Record, it is unclear if they were for another claimant or simply nonexistent. Plaintiff suggests, based on the ALJ's statements at the hearing that records of another claimant were present and being redacted, *see* DE 9 at 7 (citing A.R. 51), that the examination was potentially someone else's.

Regardless, the Commissioner argues the ALJ's error was harmless because some of the physical examination findings cited were similar to those that were in Plaintiff's file. DE 13 at 5 of 26 ("the August 2022 consultative examination report located at Exhibit 15F from Dr. Luella Bangura includes many of the examination findings noted by the ALJ…"). As such, the Commissioner suggests this was a "possible typographical error" by the ALJ. *Id.* But the examinations findings are not identical, and the records recited by the ALJ do match anything within Plaintiff's file. So it is difficult to conclude this is a mere typographical error or incorrect citation to

7

an underlying exhibit which does not require remand. *See, e.g., Koslow ex rel. Koslow v. Astrue*, 2009 WL 1457003, at \*22 (N.D. Ind. May 22, 2009).

The inclusion of evidence from another claimant's file in the written decision denying Plaintiff benefits does not automatically require remand. Instead, it is subject to harmless error analysis. *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022). Thus, while the Court agrees with the Commissioner that this improper consideration of another claimant's exam findings does not necessarily "outweigh the discussion of the evidence" elsewhere in the ALJ's opinion, *see* DE 13 at 6, that is not the standard of review or relevant inquiry. Harmless error analysis is not a balancing of more-likely-than-not. Instead, to affirm the ALJ's written decision when it incorrectly includes evidence from another claimant, the Court must be "convinced that the ALJ will reach the same result" on remand. *Wilder*, 22 F.4th at 654 (citation omitted). The Court must be able to "predict with great confidence what the result of remand will be." *Id.* That standard is different than pointing to other evidence which supported the ALJ's decision, even it is substantial. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("[T]he fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless.").

Plaintiff relies heavily on *Martinez v. Kijakazi*, 71 F.4th 1076, 1080 (7th Cir. 2023) in support of her argument, and the Court agrees the case is highly instructive. There, one exhibit contained pages of the claimant's chiropractic records interspersed with records from another claimant. *Martinez*, 71 F.4th at 1080-81. The records of

8

the other claimant were removed and redacted by the Appeals Council prior to judicial review, so the court could not in all instances understand what records the ALJ was referring to at times in the written decision. It was the resulting ambiguity that required remand. "In two instances, the ALJ's analysis [was] sufficiently clear" that the Court could "definitively identify what page of exhibit B15F the ALJ was referencing," and it was clear those were to either the correct claimant's records or imposed additional limitations (which would likely be harmless). *Id.* at 1080. But with regard to another five citations to the same exhibit in the ALJ's decision, the court was unable to determine what pages (and therefore which claimant's records) the ALJ was referencing. The Court was thus "left to speculate" and could not affirm the ALJ's decision. *Id.* at 1081. The Court's "inability to determine" how the ALJ used those records prevented a finding that the ALJ's decision was supported by substantial evidence and remand was warranted. *Id.*

Here, the problem with how the ALJ used records from another claimant is different from *Martinez*, but the effect is similar. In the narrative portion of the written decision explaining the RFC, the ALJ purported to quote from Exhibit B6F in the administrative record. The ALJ wrote that "[a]s of the consultative examination in August 2022, [Plaintiff] was able to walk on heels, toes, and tandem, she was able to squat, her straight leg raise was negative, she used no assistive device, had no inflammation, no pain, no swelling, no stiffness, no effusions, full, 5/5, strength throughout, she had normal muscle tone, no atrophy, normal sensation, normal grip, no decreased sensation in fingers or toes, (B6F)." A.R. 30. But as all

9

parties agree, Exhibit B6F is a psychological consultative examination. Not only does it not include any of the portion quoted by the ALJ, it does not make any findings as to Plaintiff's physical abilities or limitations whatsoever. Thus, it is unclear what the ALJ was discussing when she referenced the "consultative examination in August 2022" on page 14 of the written decision. *See* A.R. 30. The Court can only speculate what it was and what impact it had on the ALJ's decision making.

The ALJ found that the "consultative exams do not support the claimant's allegations" generally. A.R. 29. The ALJ discussed Dr. Bangura's consultative exam (Exhibit B15F which was the findings of an examination of Plaintiff) and explained how it supported the decision. Other evidence not from physical consultative exams was then also discussed. *See* A.R. 29-30. But then the ALJ included findings from a consultative exam of unknown provenance that indicated Plaintiff could "walk on heels, toes and tandem," had "no pain" and "no stiffness." A.R. 30. Those findings are less restrictive than what Dr. Bangura found. In other words, they are evidence of greater ability than what was included in Dr. Bangura's consultative exam. Indeed, "Dr. Bangura documented pain in the lumbosacral area, hips and knees; stiffness; and difficulty with toe and tandem walking during the physical examination." DE 9 at 7 (citing A.R. 1132). But ALJ did not address the discrepancies between the two apparently close in time exams, and thus the Court cannot determine the error was harmless. For example, the ALJ might have thought the consultative exams were inconsistent and thus both undercut Plaintiff's allegations. Or the ALJ maybe thought one consultative exam undercut the other, so the ALJ adopted the least

restrictive one. Or the ALJ may have thought there was improvement over time between the two exams, and that's why they were cited and discussed in different portions of the narrative. Or the ALJ might have come to the exact same conclusion even without any consideration of the incorrect claimant's files or errant consultative exam (which would render it likely harmless). It is unclear.

On the one hand, the findings from the errant consultative examination, which relate to pain, stiffness, and ability to walk, have a facially logical connection to the RFC in that the ALJ found Plaintiff capable of lightwork subject to additional restrictions on standing, walking and sitting at work. *See* A.R. 25-26. Indeed, these findings are referenced by the ALJ in a paragraph immediately following the ALJ's statement that she could not "ignore the notations in the record of a normal gait, despite [Plaintiff's] impairments," and that Plaintiff's "musculoskeletal exams do not support a significant limitation in the ability to perform work activities." A.R. 30. On the other hand, these findings on their own would not suggest additional limitations beyond those found by Dr. Bangura (and adopted by the ALJ, *see* A.R. 34), since these findings would theoretically suggest fewer limitations than Dr. Bangura's. But they clearly were used by the ALJ to support the conclusion that Plaintiff did not have any "significant limitation in the ability to perform work activities." *Id.* It is thus difficult to trace and follow the ALJ's reasoning on this critical issue.

The Court, like in *Martinez*, would be required to speculate in order to say the error was harmless. It is this uncertainty which cannot be allayed based on the current record, and that requires remand. The burden is on the Commissioner to

11

demonstrate that the ALJ's error was harmless. *Wilder*, 22 F.4th at 654; *Spiva*, 628 F.3d at 353. But "[t]he Commissioner cannot fashion a logical bridge that the administrative decision never built." *Wolford*, 658 F. Supp. 3d at 669. Review is "confine[d] … to the reasons offered by the ALJ" and the Court "will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence." *Phillips v. Astrue*, 413 F. Appx. 878, 883 (7th Cir. 2010). Nor is it sufficient that the ALJ *might* reach the same result. *Spiva*, 628 F.3d at 353. Accordingly, remand is necessary.

Because the ALJ's inclusion of another claimant's medical records and ambiguities in the analysis require remand, the Court will not address Plaintiff's remaining arguments. Those should instead be raised at the hearing on remand before the ALJ.

### Conclusion

For the reasons discussed, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion. The Clerk of Court is **DIRECTED** to enter judgment in favor of the Plaintiff.

SO ORDERED this 24th day of March 2026.

/s/ *Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT